UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  2010-20719-CR-ALTONAGA

UNITED STATES OF AMERICA

vs.

JOHN CORREA,
ABDIEL FALCON,
CHARLES NOVA, and
BLASDIMIR URENA,

      Defendants.
_____/

**JOINT FACTUAL STATEMENT**

This Joint Factual Statement contains a joint statement of facts that accompany the above referenced criminal case and Plea Agreements signed and dated this same day between the United States and the defendants, John Correa, Abdiel Falcon, Charles Nova, and Blasdimir Urena (hereinafter "Correa," "Falcon," "Nova," "Urena," or collectively as "the defendants"). The defendants are pleading guilty because they are in fact guilty. The defendants certify that they hereby admit that the facts set forth below are true and were the case to go to trial, the United States would be able to prove these specific facts and others beyond a reasonable doubt.

During the time period of the conduct charged in the Criminal Information, federal law prohibited any person from fraudulently or knowingly importing or bringing into the United States any merchandise contrary to law, or receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law. Possession of such

goods, unless explained to the satisfaction of the jury, is evidence sufficient to authorize conviction. Title 18, United States Code, Section 545. In addition, it is illegal knowingly and willfully, with intent to defraud the United States, to smuggle, or clandestinely introduce, or attempt to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or to make out or pass, or attempt to pass through the customhouse, any false, forged, or fraudulent invoice, or other document or paper. Id. In addition, any person who aids or abets the commission of an offense against the United States is punishable as a principal. Title 18, United States Code, Section 2.

The Federal Clean Air Act (hereinafter "CAA"), Title 42, United States Code, Section 7401 *et seq.*, was in effect and regulated the emission of pollutants into the air, and empowered the United States Environmental Protection Agency (hereinafter "EPA") to establish regulations addressing various air pollutants. The purpose of the CAA is, among other things, "to protect health and welfare from any actual or potential adverse effect which in the EPA administrator's judgment may reasonably be anticipated to occur from air pollution or from exposures to pollutants in other media. . ." and "to protect and enhance the quality of the nation's air resources so as to promote public health and welfare and the productive capacity of its population." Title 42, United States Code, Sections 7470 and 7401(b)(1). Chlorodifluoromethane or difluoromonochloromethane, also known as hydrochlorofluorocarbon-22 (hereinafter "HCFC-22"), a Class II ozone depleting substance (hereinafter "Class II ODS") is regulated under an international agreement, the Montreal Protocol on Substances That Deplete the Ozone Layer, a Protocol to the Vienna Convention for the Protection of the Ozone Layer. The Montreal Protocol was implemented in the United States by Title VI of the CAA, Title 42, United States Code, Sections 7671-7671q, and by the Stratospheric

Ozone Protection regulations promulgated by the EPA, Title 40, Code of Federal Regulations, Part 82. The CAA and its implementing regulations established a schedule to phase out ODS production and importation. Class II ODSs, which are the HCFCs, are scheduled for phase-out between 2002 and 2030.

The Montreal Protocol required the United States to reduce its consumption of ODSs by 35 percent below the baseline cap by January 1, 2004. To meet its commitment, the United States took several steps which included issuing baseline allowances for production and import of HCFC-22. HCFC-22 has been the refrigerant of choice for residential heat pump and air-conditioning systems for more than four decades. The EPA allocates 100 percent of the United States consumption and production caps to individual companies. Effective January 21, 2003, EPA restricted the import of bulk quantities of HCFC-22 to only those persons holding unexpended HCFC-22 consumption allowances. The full ODS phase-out schedule is set forth in Title 40, Code of Federal Regulations, Part 82, Subpart A, Appendix H, and the phase-out schedule specifically addressing the Class II ODSs is found in Title 40, Code of Federal Regulations, Section 82.16. Persons that hold baseline consumption allowances to import HCFC-22 are listed in Title 40, Code of Federal Regulations, Section 82.19.

At all times relevant to this matter, Correa and Urena owned and operated a refrigeration business, Falcon owned and operated a shipping and freight forwarding business, and Nova worked at a shipping and export company. The illegal imports themselves were done from an unrelated company named Goodfellas LLC (hereinafter "Goodfellas"), which is actually a barber shop owned by Correa and his father. The importations were done under the Goodfellas name in order to avoid attention to Correa and Urena's refrigeration business. Defendants Correa and Urena have a long

history working in the refrigeration sales and service industry. Both, having been sales managers at another refrigeration supply company were familiar with refrigerant gas, including competitive pricing based on the increasingly decreased supply (with no dip in demand) due to the phase-out and restrictions on the importation of HCFC-22. Through their business dealings, defendants Correa and Urena received information about another person selling illegally imported HCFC-22 at lower prices and they began purchasing from him. That individual would purchase the HCFC-22 from China where it was cheaper, import it into the Dominican Republic, and then traffic it into the United States where it was sold at a higher profit. After the defendants decided to import the HCFC-22 on their own, defendants Correa and Urena handled the majority of the details of the sale and importation. Because Correa and Urena did not have sufficient funds for the import, they sought investment funds from their largely silent partner, defendant Nova. Nova was also helpful in some of the logistics as he had extensive dealings and contacts in the Dominican Republic. In addition to the purchase of the HCFC-22, the defendants purchased a limited quantity of HCFC-134a, which they strategically placed in the front rows of the containers to act as a "wall" intended to avoid detection of the smuggled product in the containers. HCFC-134A refrigerant is commonly used for domestic refrigeration as well as automotive applications and its importation is not subject to restriction by the CAA. At no time did any of the defendants hold unexpended consumption allowances that would have allowed them to legally import the HCFC-22. Defendants Correa and Urena arranged for the packaging of the HCFC-22 into boxes that were created to look like packaging for HCFC-134a in order to disguise the contents. Those boxes were acquired in the United States and shipped to the Dominican Republic for use in the operation. The actual packaging of the HCFC-22 into HCFC-134a boxes was done in the Dominican Republic and facilitated by defendant Nova. The plan

was to repackage the cylinders into HCFC-22 boxes once they arrived in Miami. Defendant Falcon had previously researched the requirements and possibility of importing HCFC-22. Based on what he learned, when he actually contacted licenced customs brokers regarding the shipments he claimed to want to import only HCFC-134a. Acting as the freight forwarder, Falcon passed on the Bill of Lading, Invoice, and Power of Attorney, none of which accurately identified the merchandise to be HCFC-22, which Falcon knew it was. ~~Falcon further stated the merchandise was manufactured in the United States when in truth and in fact, he knew the merchandise was manufactured in China and imported through the Dominican Republic.~~

The investigation revealed two customs entries by Goodfellas between October 21, 2008 and December 2, 2008, which falsely declared the merchandise as HCFC-134a. During 2008, the defendants illegally imported two shipments (two containers) of mostly restricted HCFC-22, through two entries filed by or caused to be filed by the defendants with the United States Customs and Border Protection (hereinafter "CBP") numbered M0507140107 and M2107388789. The shipments were transported from the Dominican Republic to the United States onboard a commercial vessel. On October 21, 2008, the first shipment, M0507140107, identified the merchandise coming from a company in the Dominican Republic and as containing United States manufactured HCFC-134a. In truth, the shipment contained approximately 10,839 kilograms, or 797 cylinders, of restricted HCFC-22. Similarly, on December 2, 2008, entry M2107388789 identified the merchandise as coming from a company in the Dominican Republic and claimed the HCFC-134a was manufactured in the Dominican Republic. In truth, that shipment contained approximately 12,240 kilograms, or 900 cylinders, of restricted HCFC-22. Together, the importations contained approximately 23,079

kilograms, or 1,697 cylinders, of restricted HCFC-22, with an approximate fair market value of $257,944.00.

The defendants each agree and admit that based on the above facts, that in the Southern District of Florida, the above referenced entries belonged to the defendants and were imported into the United States, that the importations were contrary to law, and that they knowingly imported or caused to be imported merchandise, that is: HCFC-22 in the approximate amounts described in the Information, Plea Agreement, and in this Joint Factual Statement, contrary to the Clean Air Act by knowingly violating and causing to be violated a requirement and rule relating to stratospheric ozone protection by importing and causing to be imported into the United States a Class II controlled substance without holding unexpended consumption allowances all in violation of Title 18, United States Code, Sections 545 and 2.

AGREED TO AND RESPECTFULLY SUBMITTED,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

DATE: 10/20/10        By: _____
                           Jodi A. Mazer
                           Special Assistant U.S. Attorney

DATE: 10/20/10        By: _____
                           Thomas A. Watts-FitzGerald
                           Assistant United States Attorney

DATE: 10/20/10        By: _____
                           EDWARD J. O'DONNELL IV, ESQ.
                           ATTORNEY FOR DEFENDANT JOHN CORREA

DATE: 10/20/10          By: _____
                             JOHN CORREA
                             DEFENDANT

DATE: 10/20/10          By: _____
                             WILLIAM R. BARZEE, ESQ.
                             ATTORNEY FOR DEFENDANT ABDIEL FALCON

DATE: 10/20/10          By: _____
                             ABDIEL FALCON
                             DEFENDANT

DATE: 10/20/10          By: _____
                             PAUL J. KNESKI, ESQ.
                             ATTORNEY FOR DEFENDANT CHARLES NOVA

DATE: 10/20/10          By: _____
                             CHARLES NOVA
                             DEFENDANT

DATE: 10/20/10          By: _____
                             THOMAS W. RISAVY, ESQ.
                             ATTORNEY FOR DEFENDANT BLASDIMIR URENA

DATE: 10/20/10          By: _____
                             BLASDIMIR URENA
                             DEFENDANT